**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **MICHAEL S. WILSON, # R-06115,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | **Case No. 15-cv-1249-NJR** |
| ) | |
| **SHERRY BENTON, *et al.*,** ) | |
| ) | |
| **Defendants.** ) | |

## <u>MEMORANDUM AND ORDER</u>

**ROSENSTENGEL, District Judge:**

Plaintiff is currently incarcerated at Big Muddy River Correctional Center ("BMRCC"),[1] where he is serving an 18-year sentence. He brings this *pro se* civil rights action pursuant to 42 U.S.C. § 1983, based on events that occurred while he was incarcerated at Pinckneyville Correctional Center ("Pinckneyville") and Illinois River Correctional Center ("Illinois River"). He sues a total of twenty-five individual Defendants, the Illinois Department of Corrections ("IDOC"), and an undetermined number of Unknown ("John Doe") Defendants. He enumerates fifteen separate claims, most of which are unrelated to one another. These include allegations that Plaintiff was improperly charged a $5.00 fee for a new identification card, was unlawfully denied a meal as punishment, had his mail improperly opened and delayed, was denied grievance forms, and that he was targeted for retaliation for having filed an earlier lawsuit, as well as other claims. Some of the events giving rise to Plaintiff's claims date back to 2012; other incidents occurred in 2013, 2014, and 2015 (Doc. 1-1, p. 16). The complaint is now before the Court for a preliminary review pursuant to 28 U.S.C. § 1915A.

---

[1] Plaintiff submitted a temporary change of address, noting that he will be housed at Illinois River Correctional Center from December 9 until an undetermined date, on a court writ to appear in Peoria County for a juvenile/family court hearing (Doc. 9).

Under § 1915A, the Court is required to conduct a prompt threshold review of the complaint and to dismiss any claims that are frivolous, malicious, fail to state a claim on which relief may be granted, or seek monetary relief from an immune defendant.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that "no reasonable person could suppose to have any merit." *Lee v. Clinton*, 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id.* at 557. Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id.* At the same time, however, the factual allegations of a pro se complaint are to be liberally construed. *See Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

In light of these standards, some of Plaintiff's claims survive § 1915A review; others shall be dismissed.

**The Complaint**

In addition to his thirteen page statement of claim (Doc. 1, pp. 19-31), Plaintiff submits 273 pages of exhibits, to which he refers several times in the complaint (Docs. 1-1 through 1-5). Voluminous exhibits such as these are discouraged at the preliminary review stage. The Court shall analyze Plaintiff's claims based on the factual allegations contained in the statement of claim and may refer to certain exhibits only where Plaintiff has clearly referenced relevant document(s).

Count 1 of the complaint (Grievance # 12-61-12) claims that on October 31, 2012, Plaintiff was deprived of property without due process of law when he was charged $5.00 by an unknown (John Doe) Pinckneyville employee for his annual I.D. card (Doc. 1, pp. 19-20). Prison administrative rules provide that the I.D. should be free of charge. Plaintiff includes Defendant Karen Miller, who deducted the $5.00 charge. He further states that Defendants M. Hartman (Pinckneyville counselor) and Kim Deen[2] (Pinckneyville grievance counselor) are named in this count "for I.D. purposes on John Doe and failure to protect Plaintiff from unconstitutional acts" (Doc. 1, p. 20). He also includes Defendant Sherry Benton (of the IDOC Administrative Review Board) for failure to protect him from unconstitutional acts and for failing to provide a formal hearing on any of his grievances, including the one Plaintiff filed over this matter.

Count 2 (Grievance # 12-89-12) claims that Defendants Pat Rensing, Major D. Cleland, Cynthia Jordan, Marcus Myers, and Major R. Hammonds unlawfully detained Plaintiff for thirty days in segregation (Doc. 1, pp. 21-22). Defendant Rensing charged him with a disciplinary infraction for unauthorized movement, in retaliation for Plaintiff informing her that she had violated a rule. Defendant Cleland had approved Plaintiff's movement to go to Defendant Rensing's department to get a replacement for a broken razor, but signed off on the disciplinary

---

[2] Elsewhere in the complaint, Plaintiff spells this Defendant's surname as "Dean" (Doc. 1, pp. 2, 7).

ticket in retaliation for Plaintiff's pending lawsuit against Pinckneyville Warden Gaetz.[3] Defendants Jordan and Myers conducted the adjustment committee that found Plaintiff guilty of the infraction, without investigating the matter. Defendant Hammonds signed to approve Plaintiff's continued confinement, again, in retaliation for Plaintiff's earlier lawsuit. As with Count 1, Plaintiff includes Defendants Deen/Dean and Benton, claiming they failed to protect him from the other Defendants' unlawful conduct.

Count 3 (Grievance # 1-23-13) states that on an unspecified date, Lt. Hubler[4] unlawfully denied Plaintiff one meal as a form of punishment, after an altercation with another officer. Defendants Deen/Dean and Benton are included in this count as well (Doc. 1, p. 23).

Count 4 (Grievance # 3-18-13) is against Pinckneyville mailroom staff (names unknown) for constantly delaying and/or losing Plaintiff's legal and regular mail (Doc. 1, p. 23).

Count 5 (Grievance # 4-08-13) claims that Defendant K. Melvin denied Plaintiff his right to file grievances because she would not give him grievance forms. Officers Rolla, Arvi,[5] and a John Doe Officer locked Plaintiff in his cell in retaliation for his complaint about being denied the forms (Doc. 1, p. 24).

Count 6 (Grievance # 7-70-13) states that Defendant Melvin violated Plaintiff's right to access the courts, by denying Plaintiff a money voucher form that he needed to post/mail "numerous legal papers" (Doc. 1, pp. 24-25). This caused a delay in Plaintiff's court filings relating to his family law case involving his son. She also failed to look into Plaintiff's lack of indigent supplies.

---

[3] *Wilson v. Gaetz, et al.*, Case No. 14-cv-71-NJR-DGW (S.D. Ill. filed Jan. 21, 2014, and dismissed Sept. 21, 2015).

[4] Plaintiff failed to include Lt. Hubler in his list of Defendants.

[5] Officer Arvi is not included among the listed Defendants; Plaintiff names Billy Rolla (T.A. Law Librarian) as a Defendant, but this description leads the Court to conclude that he is not the same "Officer Rolla" who locked Plaintiff in his cell.

Count 7 (no grievance number; date 9-12-13) claims that unknown Pinckneyville mailroom staff unlawfully opened Plaintiff's "quasi-legal" privileged mail from the ARB (Doc. 1, p. 25). He includes Defendants Melvin and Benton for failing to protect him from this conduct.

Count 8 (Grievance # 9-83-13) also involves legal/privileged mail (Doc. 1, p. 26). Without providing specifics, Plaintiff asserts that the unknown mailroom staff at Pinckneyville failed to post and mail his outgoing item(s), thus violating his right to access the courts. Additionally, Defendant Warden Gaetz denied Plaintiff access to the courts when he took no steps to inform Plaintiff of a detainer lodged against him, hindering Plaintiff's efforts to seek disposition of the matter. Plaintiff asserts that this action/failure to act was in retaliation for Plaintiff's earlier lawsuit against Defendant Gaetz. As with his other claims, Plaintiff includes Defendants Deen/Dean and Terri Anderson (ARB), because they failed to protect him from these violations.

Count 9 (Emergency grievance dated 2-27-14) does not describe any specific actions, but is labeled "Staff conduct, mail handling, violation of standard procedures & failure to comply with job duties" and refers to an attached exhibit (Doc. 1, p. 27). Defendant Thomas Spiller (Pinckneyville Warden) allegedly failed to address legal/constitutional violations being committed in the facility. Plaintiff also names Defendants Vicki Hubbard (counselor) and Benton (ARB) in this count.

Count 10 (Grievance # 1-31-14) claims that Pinckneyville "committed theft" by charging Plaintiff a $10.00 medical co-payment when he was indigent (Doc. 1, p. 27). Defendant Karen Miller "delay[ed] the process to take monies outside the bounds of the law." *Id.*

Count 11 (Grievance # 5-169-14) again claims that Pinckneyville mailroom employees

failed to send out Plaintiff's legal mail (Doc. 1, p. 28). Some of it was sent out "months late," and he claims this delay was purposely calculated to hinder his search for counsel in pending Case No. 14-cv-71-NJR-DGW (S.D. Ill.). Plaintiff includes Defendant Hubbard (counselor) in order to identify the John Doe mailroom staff.

Count 12 (Grievance # 6-15-14) claims that in March 2014, Defendant Miller and Dana Prasaki (Pinckneyville Law Librarian)[6] denied Plaintiff legal supplies, rendering him "unable to complete law work" and denying him access to the courts (Doc. 1, p. 29).

Count 13 (Grievances dated 12/3/14 and 1/14/15, completed 3/24/15) addresses events that occurred at Illinois River. Unknown mailroom staff violated Plaintiff's access to the courts, by refusing to send out his legal mail to his attorneys (Doc. 1, p. 29).

Count 14 (Grievances dated 12/4/14 and 1/14/15, completed on 3/24/15) is against Illinois River Law Library Staff and Defendant Cherryle Hinthorne, who refused to admit Plaintiff to the library and refused to make copies (Doc. 1, p. 30). This allegedly delayed progress in Plaintiff's pending civil rights case in this Court (No. 14-cv-71-NJR-DGW), and his state court case (14-JA-190/191). Plaintiff asserts that Defendant Mark Spencer (paralegal at IDOC in Springfield) and Defendant Stephanie Dorethy (Illinois River Assistant Warden) approved this action. Again, Plaintiff names Defendant Benton in connection with Counts 13 and 14.

Count 15 charges that Defendant Illinois Department of Corrections and "Administrative Staff" allowed, created, or approved of the unconstitutional practices described in Counts 1-14 (Doc. 1, pp. 30-31). He specifically lists Defendants S.A. Godinez (IDOC Director), Spencer, Gaetz, and Benton under this count.

Plaintiff seeks compensatory and punitive damages, as well as an injunction to stop

---

[6] Plaintiff failed to include Dana Prasaki among his listed Defendants.

Defendants from violating the law (Doc. 1, p. 31).

**Merits Review Pursuant to 28 U.S.C. § 1915A**

Accepting Plaintiff's factual allegations as true, the Court finds that Plaintiff has articulated a colorable federal cause of action for unconstitutional retaliation in **Count 2** against Defendants Rensing, Cleland and Hammonds, which shall receive further review in this case. His mail-related claims and access-to-court claims in **Counts 4, 8(A), and 11,** as well as the claims of retaliation and denial of access to the courts against Defendant Gaetz in **Count 8(B)**, also survive § 1915A review. However, Plaintiff must identify the Unknown Mailroom Defendants in order for his claims against them to proceed. Similarly, the access-to-court claims in **Count 12** may be actionable if Plaintiff amends his pleading to provide additional factual support. But it is not proper to allow the group of claims in Counts 4, 8, and 11, or the claims in Count 12 to proceed in the same action as Count 2. In addition, the claims in **Counts 13 and 14** are not only unrelated to the claims in Counts 1-12, but they arose at Illinois River, which is outside the Southern District of Illinois.

In *George v. Smith*, 507 F.3d 605 (7th Cir. 2007), the Seventh Circuit emphasized that unrelated claims against different defendants belong in separate lawsuits, "not only to prevent the sort of morass" produced by multi-claim, multi-defendant suits "but also to ensure that prisoners pay the required filing fees" under the Prison Litigation Reform Act. *George*, 507 F.3d at 607, (citing 28 U.S.C. § 1915(b), (g)). Plaintiff's complaint contains a number of unrelated claims arising from distinct incidents, against different defendants. Therefore, consistent with the *George* decision and Federal Rule of Civil Procedure 21, the Court shall sever the unrelated claims as outlined below and shall open a new case with a newly-assigned case number for each claim. Plaintiff will be assessed a new filing fee for each severed case.

Plaintiff has attempted to link the various unrelated claims by including Defendants Benton and/or Deen/Dean in nearly every count. It is clear from the factual allegations, however, that the grievance officers, counselors, ARB members, and (in most cases) other administrators were not personally involved in the incidents that may have violated Plaintiff's constitutional rights.

Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, "to be liable under § 1983, the individual defendant must have caused or participated in a constitutional deprivation." *Pepper v. Village of Oak Park*, 430 F.3d 805, 810 (7th Cir. 2005) (internal quotations and citations omitted). A grievance officer or administrator (such as Defendants Benton, Deen/Dean, and Anderson) who reviews a prisoner's grievance or complaint after the fact does not incur liability merely because s/he fails to resolve the matter to the prisoner's satisfaction. The same is true when, as Plaintiff puts it, such an officer "fails to protect" him from the alleged unconstitutional conduct that already occurred at the hands of another person. Further, the alleged mishandling of grievances "by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). *See also Grieveson v. Anderson*, 538 F.3d 763, 772 n.3 (7th Cir. 2008); *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996). For this reason, Plaintiff's claim that Defendant Benton failed to hold formal hearings on his grievances does not amount to a constitutional violation.

Similarly, officials such as the warden or agency director cannot be held liable merely because they hold supervisory positions, as the doctrine of *respondeat superior* is not applicable to § 1983 actions. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (citations omitted). The officials who were not directly involved in the alleged unconstitutional acts described in the

complaint shall thus be dismissed from the case.

**Claims to Receive Further Review (in Full or in Part)**

**Count 2 – False Disciplinary Report and Retaliation**

Only the retaliation portion of Count 2 survives threshold review–that is, Plaintiff's claims that Defendant Rensing initiated the disciplinary charge to retaliate against Plaintiff for complaining that she had violated a prison rule; that Defendant Cleland endorsed the disciplinary ticket even though he had authorized Plaintiff's movement, in retaliation for Plaintiff's litigation activity; and that Defendant Hammonds kept him confined, again in retaliation for Plaintiff's prior lawsuit.

Prison officials may not retaliate against an inmate for exercising his First Amendment rights, even if their actions would not independently violate the Constitution. *See Zimmerman v. Tribble,* 226 F.3d 568, 573 (7th Cir. 2000); *Howland v. Kilquist*, 833 F.2d 639, 644 (7th Cir. 1987) ("an act in retaliation for the exercise of a constitutionally protected right is actionable under Section 1983 even if the act, when taken for different reasons, would have been proper"); *see also Bridges v. Gilbert*, 557 F.3d 541, 552 (7th Cir. 2009). To state a claim for retaliation, "[a]ll that need be specified is the bare minimum facts necessary to put the defendant on notice of the claim so that he can file an answer." *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002). Naming the suit or other protected activity, and the act of retaliation is all that is necessary to state a claim of improper retaliation. *Id.* Plaintiff's allegations suffice at this stage to state a retaliation claim against Defendants Rensing, Cleland, and Hammonds.

On the other hand, the portion of Count 2 that asserts a claim for deprivation of a liberty interest (30 days in segregation) without due process fails to state a constitutional claim upon which relief may be granted. The same is true for Plaintiff's property claim for having been

deprived of his $10.00 state pay during his segregation term.[7] Thus, Defendants Jordan, Myers, Deen/Dean, and Benton shall be dismissed from this claim.

Under certain limited circumstances, an inmate punished with segregation may be able to pursue a claim for deprivation of a liberty interest without due process of law. *See Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697-98 (7th Cir. 2009). Those circumstances are not present in the instant case. First, Plaintiff does not point to any denial of procedural due process in the conduct of his disciplinary hearing. *See Wolff v. McDonnell*, 418 U.S. 539, 563-69 (1974) (to satisfy due process concerns, inmate must be given advance written notice of the charge, the right to appear before the hearing panel, the right to call witnesses if prison safety allows, and a written statement of the reasons for the discipline imposed); *Black v. Lane*, 22 F.3d 1395, 1402 (7th Cir. 1994) (disciplinary decision must be supported by "some evidence"). Further, an inmate has a due process liberty interest in being in the general prison population only if the conditions of his or her disciplinary confinement impose "atypical and significant hardship[s] . . . in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). For prisoners whose punishment includes being put in disciplinary segregation, under *Sandin*, "the key comparison is between disciplinary segregation and nondisciplinary segregation rather than between disciplinary segregation and the general prison population." *Wagner v. Hanks*, 128 F.3d 1173, 1175 (7th Cir. 1997).

A court must consider two elements to determine whether disciplinary segregation conditions impose atypical and significant hardships: "the combined import of the duration of the segregative confinement *and* the conditions endured by the prisoner during that period." *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697-98 (7th Cir. 2009) (emphasis in original). The first

---

[7] See the discussion regarding deprivation of a property interest under Count 1 below. Further, Plaintiff received the process he was due during the hearing on his disciplinary charges and the grievance he filed to challenge his punishment.

factor focuses solely on the length of the disciplinary segregation. For relatively short periods of disciplinary segregation, inquiry into specific conditions of confinement is unnecessary. *See Lekas v. Briley*, 405 F.3d 602, 612 (7th Cir. 2005) (56 days); *Thomas v. Ramos*, 130 F.3d 754, 761 (7th Cir. 1997) (70 days) ("a relatively short period when one considers his 12 year prison sentence"). In these cases, the short duration of the disciplinary segregation forecloses any due process liberty interest regardless of the conditions. *See Marion*, 559 F.3d at 698 ("we have affirmed dismissal without requiring a factual inquiry into the conditions of confinement").

In Plaintiff's case, he was punished with only thirty days in segregation. This period is too short to implicate a due process liberty interest, and further inquiry into the segregation conditions (a subject on which the complaint is silent) is not necessary. Accordingly, the portion of Count 2 which asserts a due process claim based upon the disciplinary action shall be dismissed. No other constitutional violations are apparent from the facts Plaintiff presents on this count.

At this juncture, Plaintiff may proceed with his retaliation claims in **Count 2** against Defendants Rensing, Cleland, and Hammonds only. These claims shall proceed in this action under Case Number 15-cv-1249-NJR. All other aspects of Count 2 shall be dismissed with prejudice. The remaining claims which survive § 1915A review but involve other Defendants and are factually unrelated to Count 2 shall be severed into separate cases.

**Counts 4, 7, 8, and 11 – Interference with Legal and Personal Mail; Access to Courts**

The analysis of these counts is combined, because they each involve similar allegations that Plaintiff's mail was delayed or improperly opened by Unknown Defendants (John/Jane Doe Pinckneyville Mailroom Staff). Count 8 also charges Defendant Gaetz with retaliation and denying Plaintiff access to the courts. The surviving counts in this group shall be severed into a

separate action.

To recap, **Count 4**, dating from January 2013, claims that Pinckneyville mailroom staff "constantly" delayed or lost Plaintiff's regular and legal mail. **Count 7** states that in September 2013 mailroom staff opened an envelope addressed to Plaintiff from the Administrative Review Board outside Plaintiff's presence. **Count 8** has two parts: (A) Mailroom staff in September 2013 failed to send out Plaintiff's legal/privileged mail, allegedly denying him access to the courts with reference to a pending detainer; and (B) Defendant Warden Gaetz denied Plaintiff access to the courts by failing to inform Plaintiff about the detainer that had been lodged against him, in retaliation for Plaintiff's lawsuit against him. **Count 11** claims that in early 2014, mailroom staff again denied Plaintiff access to the courts by purposely failing to timely send out his legal mail related to Case No. 14-cv-71-NJR-DGW.

> Inmates have a First Amendment right both to send and receive mail, *Rowe v. Shake*, 196 F.3d 778, 782 (7th Cir. 1999), but that right does not preclude prison officials from examining mail to ensure that it does not contain contraband, *Wolff v. McDonnell*, 418 U.S. 539, 576, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); *Rowe*, 196 F.3d at 782.

*Kaufman v. McCaughtry*, 419 F.3d 678, 685 (7th Cir. 2005). A sporadic disruption of mail service will not violate the Constitution. Although the First Amendment "applies to communications between an inmate and an outsider," a valid claim requires an allegation that there has been "a continuing pattern or repeated occurrences" of denial or delay of mail delivery. *Zimmerman v. Tribble*, 226 F.3d 568, 572 (7th Cir. 2000) ("Allegations of sporadic and short-term delays in receiving mail are insufficient to state a cause of action grounded upon the First Amendment." (citing *Rowe*, 196 F.3d at 782; *Sizemore v. Wiliford*, 829, F.2d 608, 610 (7th Cir. 1987))).

Mail between a prisoner and his attorney is entitled to greater protections than non-legal mail, because of the potential for interference with the prisoner's right of access to the courts. *Rowe*, 196 F.3d at 782. These protections include the right of the inmate to be present when clearly marked legal mail is opened by a prison official. The official's review should be limited to verifying that the mail is indeed a communication, related to current or prospective representation, from a lawyer who is authorized to practice law in the relevant jurisdiction and is in fact the prisoner's lawyer or prospective counsel. *Guajardo-Palma v. Martinson*, 622 F.3d 801, 804 (7th Cir. 2010); *see also Wolff v. McDonnell,* 418 U.S. 539, 576–77 (1974).

**Counts 4 and 7** involve non-legal mail. In **Count 4**, Plaintiff has alleged a potential constitutional violation, in that there was an ongoing pattern of delay in the delivery of incoming mail. Some mail was delayed for three weeks or more (Doc. 1-2, pp. 3-10). This claim merits further review–however, Plaintiff will have to identify the mailroom defendant(s) who were allegedly at fault in order for the claim to proceed. In order to assist him in doing so, the current Warden of Pinckneyville shall be added as a Defendant, so that the warden may respond to Plaintiff's reasonable discovery requests as to the identity of the responsible parties. Defendants Deen/Dean and Benton, whose involvement was limited to reviewing Plaintiff's grievances, shall be dismissed from this count.

**Count 7** shall be dismissed without prejudice. Incoming mail from the Administrative Review Board is "privileged" according to the applicable prison regulations. *See* ILL. ADMIN. CODE tit. 20, § 525.110 (2014). This does not, however, confer constitutional protection onto such communications. A letter from the ARB is not "legal mail," because it is not from an attorney who would be representing Plaintiff. Thus, the opening of such a letter does not create a potential infringement on his access to the courts. The communication referenced by Plaintiff

appears to have been a response by the ARB to his appeal of a grievance. No cognizable claim is stated in Count 7 against the unknown mailroom defendants, or against Defendants Melvin and Benton, who merely responded to Plaintiff's grievance.

**Counts 8 and 11** involve legal communications. In Count 8(A), Plaintiff claims that a letter to his attorney, as well as other mail to prison officials relating to his pending detainer, was not sent out as it should have been (Doc. 1-2, p. 50; Doc. 1-3, pp. 1-4). The failure to send the attorney letter raises a potential constitutional violation. It appears that this letter as well as the other outgoing mail related to the same pending detainer issue; therefore, it is possible that a delay of any of these letters may have affected Plaintiff's right to access the courts to resolve the detainer matter. Count 8(B) is related to the detainer issue, in that Plaintiff claims that Defendant Gaetz further interfered with his access to the courts by failing to inform him of the detainer so that he could resolve the pending matter. Added to this is a claim that Defendant Gaetz's failure to perform his duties related to the detainer was motivated by retaliation for Plaintiff's pending lawsuit against him. At this stage, both the access-to-courts claims against the Unknown Defendant Mailroom Staff and Defendant Gaetz, as well as the retaliation claim against Defendant Gaetz, may proceed under **Count 8**, and will be severed from the original action. Defendants Deen/Dean and Anderson shall be dismissed from this claim.

**Count 11** states that in March and April 2014, the mailroom staff delayed Plaintiff's outgoing legal communications in which he attempted to secure representation in Case No. 14-cv-71-NJR-DGW (Doc. 1-4, pp. 32-39). This allegation raises a colorable access-to-courts claim in that the mail interference "has the potential to undermine the prisoner's right to retain his counsel of choice in his civil court proceeding and have a fair hearing." *Guajardo-Palma v. Martinson*, 622 F.3d 801, 803 (7th Cir. 2010). Accordingly, at this stage, Plaintiff may proceed

with the claim in **Count 11** against the Unknown Defendant Mailroom Staff. Defendants Hubbard, Melvin, and Benton shall be dismissed from this claim.

To summarize, **Counts 4, 8, and 11** shall proceed together, after they are severed into a separate action. **Count 7** shall be dismissed without prejudice.

**Counts 13 & 14 – Illinois River Correctional Center Claims**

Count 13 alleges that unidentified mailroom staff at Illinois River denied Plaintiff access to the courts by refusing to mail legal correspondence to his attorney. Plaintiff names only Defendant Benton in connection with this claim; however, she could not have been personally responsible for the failure to mail Plaintiff's letters, as she is not employed in the Illinois River mailroom.

Count 14 asserts that Defendant Hinthorne denied Plaintiff admission to the Illinois River Law Library and refused to make copies. This delayed the progress of Plaintiff's civil rights case in this Court (Case No. 14-cv-71-NJR-DGW) and his family law case. Plaintiff also names unidentified Illinois River Law Library staff, Assistant Warden Dorethy, IDOC Paralegal Spencer, and Benton of the ARB as Defendants on this claim.

Because the complaint shows that Defendant Benton was not directly involved in any violation of Plaintiff's rights, she shall be dismissed from Counts 13 and 14 as she has been from the other claims herein. Neither Count 13 nor 14 is factually related to the claims that arose in Pinckneyville, nor do they share any Defendants in common with the claims remaining in this action. These two counts shall be severed into another action, and that newly severed case shall be transferred to the Central District of Illinois, where Illinois River is located. An additional filing fee shall be assessed. The disposition of this severed action shall be determined by the transferee court.

**Claims to be Dismissed**

**Count 1 - $5.00 I.D. Card Fee**

Plaintiff cannot maintain a constitutional claim for being charged this fee. The only constitutional right that might be implicated by these facts is Plaintiff's right, under the Fourteenth Amendment, to be free from deprivations of his property by state actors without due process of law. To state a claim under the due process clause of the Fourteenth Amendment, Plaintiff must establish a deprivation of liberty or property *without due process of law*; if the state provides an adequate remedy, Plaintiff has no civil rights claim. *Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984) (availability of damages remedy in state claims court is an adequate, post-deprivation remedy). The Seventh Circuit has found that Illinois provides an adequate post-deprivation remedy in an action for damages in the Illinois Court of Claims. *Murdock v. Washington*, 193 F.3d 510, 513 (7th Cir. 1999); *Stewart v. McGinnis*, 5 F.3d 1031, 1036 (7th Cir. 1993); 705 ILL. COMP. STAT. 505/8 (1995).

Whether or not Plaintiff may timely file a Court of Claims action at this juncture is beyond the scope of this order. The fact that the state process exists is sufficient to defeat his constitutional claim. The federal civil rights claim in **Count 1** shall be dismissed with prejudice; this dismissal shall not prevent Plaintiff from seeking a remedy in state court, if that process is still open to him. The Court makes no comment on the merits of such a claim.

**Count 3 – Deprivation of a Single Meal**

The denial of food is not a *per se* violation of the Eighth Amendment. Rather, a district court "must assess the amount and duration of the deprivation." *Reed v. McBride*, 178 F.3d 849, 853 (7th Cir. 1999). *See generally Wilson v. Seiter*, 501 U.S. 294, 304 (1991) (it would be an Eighth Amendment violation to deny a prisoner an "identifiable human need such as food");

*Sanville v. McCaughtry*, 266 F.3d 724, 734 (7th Cir. 2001) (withholding food from an inmate can, in some circumstances, amount to an objectively serious deprivation); *Talib v. Gilley*, 138 F.3d 211, 214 n.3 (5th Cir. 1998) (noting that denial of one out of every nine meals is not a constitutional violation); *Cooper v. Sheriff of Lubbock Cnty.*, 929 F.2d 1078 (5th Cir. 1991) (failure to feed a prisoner for twelve days is unconstitutional); *Cunningham v. Jones*, 567 F.2d 653, 669 (6th Cir. 1977), *app. after remand*, 667 F.2d 565 (1982) (feeding inmates only once a day for 15 days, would constitute cruel and unusual punishment only if it "deprive[s] the prisoners concerned . . . of sufficient food to maintain normal health.").

The denial of a single meal does not rise to the level of a constitutional violation, even if, as Plaintiff asserts, the action ran afoul of a state statute. A federal court does not enforce state law or regulations. *Archie v. City of Racine*, 847 F.2d 1211, 1217 (7th Cir. 1988) (en banc), *cert. denied,* 489 U.S. 1065 (1989); *Pasiewicz v. Lake Cnty. Forest Preserve Dist.*, 270 F.3d 520, 526 (7th Cir. 2001).

**Count 3**, which named Lt. Hubler and Defendants Deen/Dean and Benton, shall therefore be dismissed with prejudice.

### Count 5 – Denial of Grievance Forms; Retaliation

This claim is premised on the allegation that Defendant Melvin refused to provide Plaintiff with grievance forms. This, however, does not violate any constitutional right.

Prison grievance procedures are not constitutionally mandated, thus, interference with a prisoner's right to access those grievance procedures does not give rise to a constitutional claim. "[A] state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause." *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996). The Constitution requires no procedure at all, and the failure of state prison officials to follow their own

procedures does not, of itself, violate the Constitution. *Maust v. Headley*, 959 F.2d 644, 648 (7th Cir. 1992); *Shango v. Jurich*, 681 F.2d 1091, 1100-01 (7th Cir. 1982).

Plaintiff's efforts to exhaust his administrative remedies by using the prison grievance process may be relevant in the event that a Defendant raises a challenge to Plaintiff's right to maintain a § 1983 suit over the substantive matters raised in the grievances. That, however, is a question for another day. The claims in **Count 5** against Defendants Melvin, Hartman, Deen/Dean, and Benton shall therefore be dismissed with prejudice.

Plaintiff hints at a retaliation claim in Count 5 against Officers Rolla, Arvi, and John Doe, who locked Plaintiff in his cell "in retaliation to pointing out the violation" (Doc. 1, p. 24). This portion of the claim shall not be considered, for several reasons. First, Plaintiff did not include Officers Arvi or Rolla as Defendants. *See Myles v. United States*, 416 F.3d 551, 551-52 (7th Cir. 2005) (holding that to be properly considered a party, a defendant must be "specif]ied] in the caption"). Further, it is not clear that Plaintiff's unspecified conduct in "pointing out the violation" constitutes activity protected by the First Amendment. Finally, the Court fails to see how the act of locking a prison inmate in the cell where he is regularly confined can be considered an act of retaliation. *See Bridges v. Gilbert*, 557 F.3d 541, 552 (7th Cir. 2009) (in order to state a retaliation claim, prisoner must have engaged in some protected activity, and experienced an adverse action that would likely deter such protected activity in the future). Any retaliation claim contained in Count 5 shall therefore be dismissed without prejudice. If Plaintiff seeks to re-plead this retaliation claim in an amended complaint, it may be subject to severance into another separate action, which shall result in the imposition of another filing fee.

**Count 6 – Denial of Money Vouchers/Access to Courts**

Plaintiff claims that Defendant Melvin's refusal to provide him with money voucher

forms in mid-2013 caused delays in his ability to mail "numerous legal parcels" related to his pending family law case regarding his son (Doc. 1, pp. 24-25). She also failed to investigate his lack of unspecified indigent supplies.

Prisoners have a fundamental right of meaningful access to the courts. *Bounds v. Smith*, 430 U.S. 817 (1977). In order to maintain a cognizable claim for the denial of this right, however, a prisoner must be able to show "some quantum of detriment caused by the challenged conduct of state officials resulting in the interruption and/or delay of plaintiff's pending or contemplated litigation." *Alston v. DeBruyn*, 13 F.3d 1036, 1041 (7th Cir. 1994); *see also Lehn v. Holmes*, 364 F.3d 862, 868 (7th Cir. 2004). That means that some detriment that affects litigation must have resulted from the illegal conduct. It does not mean that any delay is a detriment. *Kincaid v. Vail*, 969 F.2d 594, 603 (7th Cir. 1992), *cert. denied*, 506 U.S. 1062 (1993). Regardless of the length of an alleged delay, a prisoner must show actual substantial prejudice to specific litigation. *Kincaid*, 969 F.2d at 603.

In this case, Plaintiff alleges that Defendant Melvin's conduct caused a delay in his ability to pursue his legal matter, but he does not state that his case suffered any detriment as a result.[8] As such, the complaint fails to state a claim upon which relief may be granted against Defendant Melvin for denying Plaintiff access to the courts.[9] Furthermore, Plaintiff does not explain how Defendant Melvin's failure to investigate his lack of "indigent supplies" violated his constitutional rights. **Count 6** shall therefore be dismissed without prejudice. If Plaintiff chooses

---

[8] Plaintiff's statement that the delay caused more time to pass for his son to "be in an explosive environment" is not the sort of detriment to Plaintiff's ability to prosecute his case that must be shown in order to maintain a constitutional claim.

[9] The Court notes that this claim raises a similar issue to those Plaintiff raised in *Wilson v. Gaetz*, Case No. 14-cv-71-NJR-DGW. This Court recently dismissed that action, after concluding that the right to have law library access in order to prosecute a family law case was not a clearly established constitutional right, therefore the Defendants were entitled to qualified immunity.

to re-plead this claim in an amended complaint, it may be subject to severance into another separate action, which shall result in the imposition of another filing fee.

**Count 7 –Opening of Mail from ARB Outside Plaintiff's Presence**

As discussed above on pages 13-14 (analyzing Count 7 along with Counts 4, 8, and 11), Count 7 shall be dismissed without prejudice.

**Count 9 – Defendants Spiller, Hubbard, and Benton**

Plaintiff does not include any facts in his pleading to support a claim that Defendants Spiller or Hubbard violated his constitutional rights. He merely states his conclusion that Defendant Spiller failed to address violations, and Defendant Hubbard failed to comply with job duties. He then refers to his attached exhibits, which total approximately 56 pages (Doc. 1-3, pp. 7-55; Doc. 1-4, pp. 1-8). This is insufficient to state a claim upon which relief may be granted.

A Court is not obligated to draft Plaintiff's pleading for him, nor will it sift through a stack of exhibits such as these in order to discern whether he has stated a cognizable claim. In other words, the Court is not required "to fish a gold coin from a bucket of mud." *U.S. ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003). This is exactly what Plaintiff has presented to the Court under Count 9. Therefore, **Count 9** against Defendants Spiller, Hubbard, and Benton shall be dismissed without prejudice.

**Count 10 – Medical Co-Payment**

Plaintiff alleges he was charged co-payments totaling $10.00 for medical visits, at a time when his inmate trust fund balance was low enough to make him exempt from such a charge on the basis of indigence. Even if the co-payment rule was violated, however, such an error does not violate the Eighth Amendment, nor does it constitute "theft," as Plaintiff asserts.

An inmate's constitutional rights are not violated by the collection of a fee for prison medical or dental services. Whether or not a statutory exemption should apply to the co-payment rule is a question of state law, not cognizable in a § 1983 action. *Poole v. Isaacs*, 703 F.3d 1024, 1027 (7th Cir. 2012) ("the imposition of a modest fee for medical services, standing alone, does not violate the Constitution"). Therefore, should Plaintiff wish to pursue this matter further, he must do so in state court.

The federal civil rights claim in **Count 10** shall be dismissed with prejudice; this dismissal shall not preclude Plaintiff from seeking redress in the state courts if he desires to do so. The Court makes no comment on the merits of such a claim.

## Count 12 – Denial of Indigent Legal Supplies

Plaintiff claims that in March 2014, Law Librarian Dana Prasaki (who he failed to include among the listed Defendants) refused to issue him legal supplies. Plaintiff believed he was entitled to free supplies because he had a negative balance in his inmate trust fund account. A trust fund record was prepared by Defendant Miller (Doc. 1-4, pp. 40-56). Plaintiff wrote to Defendant Hubbard (counselor) for assistance, but she did not check his records. Plaintiff claims that he was receiving indigent clothing supplies during the time in question. He asserts that because he lacked sufficient legal supplies, he was "unable to complete law work" and was denied access to the courts.

As discussed in Count 6 above, in order to maintain a claim for denial of access to the courts, Plaintiff must be able to show "some quantum of detriment caused by the challenged conduct of state officials resulting in the interruption and/or delay of plaintiff's pending or contemplated litigation." *Alston v. DeBruyn*, 13 F.3d 1036, 1041 (7th Cir. 1994); *see also Lehn v. Holmes*, 364 F.3d 862, 868 (7th Cir. 2004). He also must identify the claim that was lost (or

prejudiced) as a result of the unlawful conduct. *See Christopher v. Harbury*, 536 U.S. 403, 416 (2002); *Steidl v. Fermon*, 494 F.3d 623, 633 (7th Cir. 2007).

Plaintiff's statement that he was "unable to complete law work" indicates that he suffered a detriment to his ability to pursue a legal claim. But he does not further explain the alleged detriment, and he does not identify the case(s) that were affected. Therefore, he falls short of stating a claim upon which relief may be granted.

**Count 12** shall be dismissed without prejudice. In order to facilitate the progress of this claim, however, it shall be severed into a separate action, pursuant to *George v. Smith*, 507 F.3d 605 (7th Cir. 2007). In order to proceed further with this claim, Plaintiff shall be required to submit an amended complaint in the newly severed case, fleshing out his factual allegations and including the defendants who were directly responsible for denying him access to the courts. Plaintiff shall be assessed a filing fee for the severed case.

## Count 15 – Supervisory Liability

This claim is premised on Plaintiff's theory that the Illinois Department of Corrections and its administrative staff (former IDOC Director Godinez, head paralegal Spencer, Warden Gaetz, and ARB Officer Benton) allowed the other Defendants to violate Plaintiff's rights, and/or allowed unconstitutional guidelines, rules, directives, and practices to persist. Plaintiff does not elaborate on these alleged rules, practices, etc. Without any factual allegations to support direct involvement of these administrative officials in a specific policy or practice that led to a constitutional violation, Plaintiff's sweeping allegations boil down to the idea that these supervisory Defendants should be liable for the alleged misdeeds of their subordinate employees.

This is not the law. As discussed earlier in this order, there is no supervisory liability in a civil rights action brought under § 1983. "The doctrine of *respondeat superior* does not apply to

§ 1983 actions; thus to be held individually liable, a defendant must be 'personally responsible for the deprivation of a constitutional right.'" *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (quoting *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001)). *See also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978); *Eades v. Thompson*, 823 F.2d 1055, 1063 (7th Cir. 1987).

Furthermore, Plaintiff cannot maintain a suit for damages against the Defendant Illinois Department of Corrections, because it is a state government agency. The Supreme Court has held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). *See also Wynn v. Southward*, 251 F.3d 588, 592 (7th Cir. 2001) (Eleventh Amendment bars suits against states in federal court for money damages); *Billman v. Ind. Dep't of Corr.*, 56 F.3d 785, 788 (7th Cir. 1995) (state Department of Corrections is immune from suit by virtue of Eleventh Amendment); *Hughes v. Joliet Corr. Ctr.*, 931 F.2d 425, 427 (7th Cir. 1991) (same).

For these reasons, **Count 15** shall be dismissed with prejudice, as will Defendant Illinois Department of Corrections. Defendants Godinez and Benton shall be dismissed from the action without prejudice.

**Additional Defendants Omitted from the Statement of Claim**

Plaintiff included several more Defendants in his list of parties, but did not include any allegations against them in his statement of claim. These are Defendants Sarah Johnson (ARB), Brenda Paulsmeyer (Pinckneyville counselor), D. Hess (Pinckneyville counselor), C. Brown (Pinckneyville Health Care Unit Administrator), and Billy Rolla (T.A. Law Librarian at Pinckneyville).

Plaintiffs are required to associate specific defendants with specific claims, so that defendants are put on notice of the claims brought against them and so they can properly answer the complaint. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); FED. R. CIV. P. 8(a)(2). Where a plaintiff has not included a defendant in his statement of the claim, the defendant cannot be said to be adequately put on notice of which claims in the complaint, if any, are directed against him. Furthermore, merely invoking the name of a potential defendant is not sufficient to state a claim against that individual. *See Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998). Accordingly, Defendants Johnson, Paulsmeyer, Hess, Brown, and Rolla will be dismissed from this action without prejudice.

## Severance

The retaliation claims in Count 2 against Defendants Rensing, Cleland, and Hammonds shall proceed in this original action. Counts 4, 8, and 11, and Counts 13 and 14 shall also proceed, but shall be severed into two separate actions. *See George v. Smith*, 507 F.3d 605 (7th Cir. 2007); FED. R. CIV. P. 21. Count 12 shall also be severed into a third separate action, in which Plaintiff shall be required to submit an amended complaint before he may proceed; that requirement shall be more fully explained in an order to be entered in that severed case. Plaintiff shall be assessed a new filing fee for each of the three new severed cases.

## Pending Motions

Plaintiff's motion for recruitment of counsel (Doc. 3) shall be referred to United States Magistrate Judge Wilkerson for further consideration as to claims remaining in this action.

The motion for service of process at government expense (Doc. 4) is **GRANTED in part and DENIED in part.** Service shall be ordered below on those Defendants who remain in the action. Service shall also be ordered on the remaining Defendants in the severed actions where

appropriate. No service shall be made on the dismissed Defendants.

Plaintiff also filed a motion for explanation of Court rules (Doc. 6). This motion is **GRANTED in part** as follows. The procedural rules for the prison electronic filing program were changed effective November 5, 2015, and can now be found in this Court's General Order No. 15-05. The rules provide that after a prisoner's document is scanned and sent to the Court by prison library staff, the original document is returned to the prisoner, who shall keep it. The Notice of Electronic Filing (NEF) for every document filed shall be printed, and a copy of the NEF is given to the prisoner. When an NEF is received for a document filed by the Court on its own (orders, notices, minutes, etc.), the entire filed document shall be printed for the prisoner. However, when an NEF is received by the prison for a document that the prisoner has filed, only the NEF and the *first page* of the document shall be provided to the prisoner, in order to confirm the filing and the number of pages filed with the Court (the filing and page information is stamped on the top of the first page). Because the prisoner retains his original pleading, law library staff are not required to print another copy of the prisoner's filed document.

The portion of Plaintiff's motion (Doc. 6) requesting a copy of the new court rule, a waiver of the rule as it applies to Plaintiff, and a full copy of all 300 pages filed by Plaintiff in this action is **DENIED**. Copies may be ordered from the Clerk of Court for a fee of $0.50/page, which must be paid in advance.

**<u>Disposition</u>**

**COUNT 1, the Due Process portion of COUNT 2, COUNT 3, the Grievance portion of COUNT 5, COUNT 10, and COUNT 15** are **DISMISSED** with prejudice for failure to state a claim upon which relief may be granted. **The Retaliation portion of COUNT 5, and COUNTS 6, 7, and 9** are **DISMISSED** without prejudice for failure to state a claim upon which

relief may be granted.

Defendants **BENTON, JOHNSON, ANDERSON, GODINEZ, PAULSMEYER, HARTMAN, HESS, DEAN/DEEN, MELVIN, SPILLER, BROWN, JORDAN, MYERS,** and **ROLLA** are **DISMISSED** from this action without prejudice.

Defendant **ILLINOIS DEPARTMENT OF CORRECTIONS** is **DISMISSED** from this action with prejudice.

**IT IS HEREBY ORDERED** that the following claims, which are unrelated to the retaliation claims that shall remain in this case under **COUNT 2**, are **SEVERED** into three new cases. The new cases shall be:

(1) **COUNTS 4, 8, and 11** against **DEFENDANTS PINCKNEYVILLE MAILROOM STAFF, DONALD GAETZ,** and **WARDEN of PINCKNEYVILLE**[10] **(Official Capacity),** for delaying Plaintiff's legal and personal mail, denying him access to the courts, and for retaliation by Defendant **GAETZ;**

(2) **COUNT 12** against **DEFENDANTS HUBBARD** and **MILLER,** for denying Plaintiff legal supplies and denying him access to the courts;

(3) **COUNTS 13 and 14** against **DEFENDANTS HINTHORNE, DORETHY, SPENCER, ILLINOIS RIVER MAILROOM STAFF,** and **ILLINOIS RIVER LAW LIBRARY STAFF** for interference with Plaintiff's legal mail, denial of access to law library services, and denial of access to the courts.

In each new case, the Clerk is **DIRECTED** to file the following documents:

(1)     This Memorandum and Order
(2)     The Original Complaint (Doc. 1)
(3)     Plaintiff's motion to proceed *in forma pauperis* (Doc. 2)
(4)     Plaintiff's motion for the recruitment of counsel (Doc. 3).

Plaintiff **will be responsible for an additional $350.00 filing fee** in each new case.

**IT IS FURTHER ORDERED** that the ***only claims remaining in this action are the retaliation claims in COUNT 2 against Defendants Rensing, Cleland, and Hammonds***. This case shall now be captioned as: **MICHAEL S. WILSON, Plaintiff, vs. PATRICIA RENSING, MAJOR D. CLELAND, and MAJOR R. HAMMONDS, Defendants.**

---

[10] The Clerk shall add the Warden of Pinckneyville (Official Capacity) as a party to the severed action containing Counts 4, 8, and 11.

**IT IS FURTHER ORDERED** that Defendants **PINCKNEYVILE MAILROOM STAFF, GAETZ, HUBBARD, MILLER, HINTHORNE, DORETHY, SPENCER, ILLINOIS RIVER MAILROOM STAFF, and ILLINOIS RIVER LAW LIBRARY STAFF** are **TERMINATED** from *this* action with prejudice.

As to **COUNT 2**, which remains in the instant case, the Clerk of Court shall prepare for Defendants **RENSING, CLELAND,** and **HAMMONDS**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received

by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge **Donald G. Wilkerson** for further pre-trial proceedings, which shall include a determination on the pending motion for recruitment of counsel (Doc. 3).

Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Wilkerson for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to Plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will

cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

     **IT IS SO ORDERED.**

     **DATED:  December 10, 2015**

                                 _____

                                 **NANCY J. ROSENSTENGEL**
                                 **United States District Judge**